| | |
|---|---|
| **DENISE PAJOTTE**<br><br>PLAINTIFF<br><br>v.<br><br>**LYNETTE PAJOTTE,** *et al*<br>    DEFENDANTS<br>And<br><br>**RELIASTAR LIFE INSURANCE COMPANY**<br><br>INTERPLEADER/DEFENDANT | IN THE<br><br>CIRCUIT COURT<br><br>FOR<br><br>PRINCE GEORGE'S COUNTY<br><br>Case No.: CAL16-40434<br><br>Consolidated with: CAL16-43838 |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Denise Pajotte, by and through undersigned counsel, respectfully submits this memorandum in support of her opposition to the Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC") and for reasons state:

### I. FACTUAL ALLEGATIONS

Tyson Pajotte ("Decedent") and Plaintiff were married in civil ceremony on December 8, 1979 (the "Marriage").TAC ¶9. During their married life, the Decedent obtained the two group policies insuring his life; the insured had obtained life insurance policies ('the "Policies") from the MetLife and Voya Life Insurance Company ("Voya") now known as RLIC. TAC ¶10. In both policies, Plaintiff was the named beneficiary. TAC ¶11. The policies reserved the right of the insured to change the beneficiary named in the policies unless there had been an irrevocable designation of beneficiary. Plaintiff had not been named as an irrevocable beneficiary. TAC ¶12.

Thereafter, the parties separated due to marital problems. TAC ¶13. On or around, October 26, 2006, (the "Separation Date"), Plaintiff and Decedent executed a separation agreement (the "Agreement"), which contained a mutual waiver of marital property (the "Waiver") including each other rights in waiving any rights to the other's insurance policies. TAC ¶14. The Agreement did not speak to the right of either party to designate the other as a beneficiary in any insurance policy in the future. TAC ¶15.

The Agreement required the parties to execute the necessary documents to remove beneficiaries from the policies as a condition precedent to making the waiver final. TAC ¶16. Plaintiff took the necessary steps to remove the Decedent from her life insurance policies. Decedent took no steps to remove Plaintiff as beneficiary from either of his policies, including his retirement fund with Washington Metropolitan Transit Authority ("WMATA").

Decedent and Plaintiff divorced on November 2, 2006 and not less than twenty (20) days later, the Decedent remarried the Defendant. TAC ¶19. On November 20, 2006, Decedent married Defendant Pajotte thus; her marriage to Decedent is not legal. During the period of marriage to Defendant Pajotte, Decedent did not remove Plaintiff from his insurance policies, despite numerous opportunities and invitations from MetLife and Voya to do so. TAC ¶21.

On July 13, 2016, the Decedent suddenly and without warning passed away. TAC ¶22. On July 30, 2016 (the "Burial Date"), the Decedent was interned. Plaintiff and Defendant Pajotte both made a claim for benefits against the Life Insurance Policies. TAC ¶22. Plaintiff claimed that she is entitled, because she is the named beneficiary. Decedent had the right, authority and control over the said policies and whom he would appoint as the beneficiaries named in the policies and did not remove Plaintiff as the beneficiary of the Policy, nor did he replace Plaintiff with Defendant Pajotte as the beneficiary. TAC ¶24. Further, Plaintiff alleges that Decedent had

twelve (12) years to change the policies, had control over the policies and had not taken any steps to remove Plaintiff as beneficiary from either policy. Moreover, the Agreement required him to take the steps. Thus, Plaintiff avers that based on the statements herein and other evidence, the Decedent intended Plaintiff to remain as beneficiary on both policies. TAC ¶25. Plaintiff also asserts that she had no interest in a life insurance policy to waive. A designated beneficiary has no interest in a life insurance policy until the insured is deceased. Further, a beneficiary has no control over a policy to entitle her to say what shall be done with it, or control the change in beneficiaries, or other dealings, during the lifetime of the holder of the policy. It is only after the death of the holder that such interests or rights attach to the proceeds. Denise's right as a beneficiary was established at the time of the Decedents death and not at the time of the agreement.

Defendant Pajotte argues that Plaintiff waived her right to be designated as a beneficiary and believes that the life insurance benefit should be paid to the Estate of Tyson Pajotte ("Defendant Estate"). Defendant Estate was not named as a beneficiary in either policy. Defendant Pajotte ignores the possibility that the Decedent did not wish to change the beneficiary of the policies, because he took no action what so ever to change the beneficiary on his policy.

Defendant Metropolitan Life ("MetLife") and Relistar Life Insurance Company ("RLIC") have received claims from both parties and are withholding payment until the Court decides the issue of who is entitled to the funds. Defendant RLIC has filed an interpleader action and has deposited the insurance proceeds into the courts registry. Defendant MetLife has chosen to deposit the life insurance proceeds into the Estate.

20001CB2017

The Plaintiff made a claim to both insurance companies. MetLife denied the claim based on the incorrect representations from Defendant Pajotte that the Plaintiff waived her rights to be the beneficiary and that the funds belong to the Estate. MetLife did release the funds to the Personal Representative without notice to Plaintiff, even after having proper notice that Plaintiff was claiming an interest in the insurance proceeds. MetLife also advised Plaintiff that it would not pay out the funds until this controversy was resolved. Plaintiff is the only beneficiary named on the policy with no changes made by the decedent. Defendant is the Personal Representative of the Estate and a purported beneficiary. Both parties have sufficient legal interest in the outcome of the Court's decision as it will define the rights of the parties as to who is entitled to the funds.

Plaintiff's right as a beneficiary was established at the time of the Decedents death.

There exists an actual controversy of a justiciable issue between Plaintiff and Defendant Pajotte, individually and as personal representative of the Estate within the jurisdiction of this Court, involving the rights and liabilities of the parties. There exists an actual controversy of a justiciable issue between Plaintiff and MetLife, within the jurisdiction of this Court, involving the rights and liabilities of the parties. Antagonistic claims are present between the parties. These claims indicate imminent and inevitable litigation.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss, "this Court must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings." *Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins.*, 306 Md. 754, 768, 511 A.2d 492, 500 (1986). The facts this Court must consider are limited "**[to the four corners of the complaint]**." *Converge Servs. Grp. v. Curran*, 383 Md. 462, 475, 860 A.2d 871, 879 (2004); *accord* ***Nickens v. Mount Vernon Realty Grp.*, 429 Md. 53, 62, 54 A.3d 742, 748**

7

(2012) ("Ordinarily, when a trial court grants a motion to dismiss, the appeals court reviews that action based solely on the allegations contained within the four corners of the complaint . . . ."). Pursuant to Maryland Rule 2-322(c), however, "when a trial judge is presented with factual allegations beyond those contained in the complaint to support or **oppose a motion to dismiss** and the trial judge does not exclude such matters, **then the motion shall be treated as one for summary judgment**." *Nickens*, **429 Md. at 62-63, 54 A.3d at 748** (internal quotation mark and citation omitted); *see* Md. Rule 2-322(c); *see also Ray v. Mayor of Balt.*, 430 Md. 74, 91, 59 A.3d 545, 555 (2013) (treating motion to dismiss as motion for summary judgment because trial court considered materials outside the pleadings).

In ruling on a motion for summary judgment, the trial court addresses two issues: (1) whether the pleading, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine dispute as to any material fact and (2) whether the movant is entitled to judgment as a matter of law. *Syme v. Marks Rentals Inc.*, 70 Md. App. 235 (1987). In determining whether factual issues exist, all facts and inferences must be resolved against the moving party. *Commercial Union Ins. Co. v. Porter Hayden Co.*, 97 Md. App. 442 (1993). *Merchants Mtg. Co. v. Lubow*, 275 Md. 208 (1975). A "material fact" has been defined as one that will "somehow affect the outcome of the case." *King v. Bankerd*, 303 Md. 98, 111 (1985). Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied, even if no opposing evidentiary matter is presented. The standard test for summary judgment is "whether a fair minded jury could return a verdict for the [nonmovant] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Bagwell v. Peninsula Regional Medical Center*, 106 Md. App. 470 (1995).

20001CB2017

In considering a motion for summary judgment, the **["evidence]** of the non-movant is to be **[believed]**, and all justifiable inferences [are to be drawn in her favor]." *Anderson*, 477 U.S. at 255. In addition, the court may not make credibility determinations or weigh the evidence. *Lytle v. Household Mfg., Inc*, 494 U.S. 545, 554-555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990).

The party moving for summary judgment bears the burden of proving lack of any genuine issue of fact, and the court must view the available facts in the light most favorable to the non-moving party. The nonmoving party is "required to provide evidence that would permit a reasonable jury to find" in their favor.

It is axiomatic that summary judgment is **permissible in a declaratory action**. *Megonnell v. United States Auto Ass'n*, 368 Md. 633, 642, 796 A.2d 758 (2002). But, it is **[the exception rather than the rule]**. *McBriety v. Commissioners of Cambridge*, 127 Md. App. 59, 65, 732 A.2d 296 (1999) (citation omitted).

### III. ARGUMENT

#### a. Plaintiff did not waive her interest in the life insurance proceeds because the purported waiver language was general and not enforceable on her.

The Defendant argues that the Plaintiff waived her rights as a matter of law and that this court should not look beyond the four corners of the settlement agreement.

The Defendant's devotes the majority of their brief citing several cases which are distinguishable from this case.

Defendant relies on *Young v. Anne Arundel Cty.*, 146 Md. App. 526, 807 A.2d 651 (2002), for the proposition that a party can waive the right to collect as a beneficiary under an annuity because the waiver provision of the separation agreement sufficiently identified the annuity. In *Young*, the Court of Special Appeals found that the Separation Agreement was not unambiguous because :

9

> "**Besides identifying the specific account**, [\*\*\*84] the waiver language must specifically mention the survivorship interest or future expectancy under that account. This is where the Young waiver language of paragraph 13 is insufficient. It does not identify the survivorship interest of Gail Young that she would have upon the death of her husband. This is the contingent, future expectancy. . . . The language in paragraph 13 totally fails to identify the survivorship interest of Gail Young. Nor does it specifically identify that she has a future expectancy interest that exists under death benefit section as spouse or joint annuitant. Consequently, when this language of waiver under paragraph 13 is examined in detail, it is revealed to be general in nature".

The Court of Special Appeals in *Young*, affirmed the lower court's decision, finding that

> "that the language of the waiver paragraph "specifically identified the future expectancy with the specified certificate number...," and thus amounted to a waiver of rights

Unlike *Young*, the agreement at issue in this case did not identify which policies the Plaintiff was waiving, which companies held the policies, the policy numbers or the policy limits. The purported waiver language was general in nature and not enforceable on the Plaintiff.

*PaineWebber Inc. v. East*, 363 Md. 408, 420, 768 A.2d 1029, 1035 (2001), is instructive to the instant matter. In *PaineWebber*, the Court of Appeals, in affirming the lower court, found that:

> "Consequently, at the time [Carol] executed the Agreement, she had no property interest in the IRA. To be sure, **she had an expectancy, but an expectancy is not a property interest. It is a mere hope or wish**. As we have previously noted, during their marriage and following their divorce, **Dewey was free to remove Carol** as the named beneficiary to the East IRA, **but did not do so**. Therefore, since Carol had no property interest in the East IRA when she executed the Agreement, she could not have quit claimed her property interest in the East IRA because she had none, she had only an expectancy. Absent some specific language evidencing her intent to waive such an interest, **we conclude that a general [personal] property waiver provision does not accomplish a waiver of an expectancy interest**."

Like the facts in *PaineWebber*, the waiver provisions in the settlement agreement were "[G]eneral" in nature. Although the language specifically mentions life insurance policies, it does not provide enough information to satisfy the waiver requirements. Specifically, Section 6(d) of the Separation Agreement which provides that:

10

20001CB2017

(d) In the absence of any contrary agreement of the parties set forth elsewhere in this Agreement, in the event of the death of a party, and in the further event that the deceased party has, by document executed **prior** to the execution of this Agreement, designated the surviving party as a beneficiary of any life insurance or annuity policy, or as a beneficiary or recipient of any death or survivor benefit or other amounts payable to the surviving party in connection with any pension plan, profit sharing plan, retirement plan, annuity contract, IRA, SEP-IRA, 401(k) plan, 403(b) plan, Thrift Savings Plan, tax deferred income or savings or investment plan, deferred compensation plan, or any other tax deferral or retirement plan or account, then in such events, and notwithstanding such designation by the deceased party, the surviving party hereby waives and relinquishes any and all rights he or she might have as a beneficiary or as a surviving spouse or as a surviving former spouse or otherwise to receive the proceeds of any such life insurance or annuity policy, or to receive any death or survivor benefit or other amounts payable in connection with any such pension, profit-sharing, retirement, annuity, IRA, SEP-IRA, 401(k), 403(b), Thrift Savings Plan, tax deferred income or savings or investment plan, deferred compensation plan, or similar tax deferral or retirement plan or account; and the surviving party does hereby irrevocably assign any rights he or she might have to receive such proceeds, benefits or amounts payable to the estate of the deceased party for distribution pursuant to the Last Will and Testament of the deceased party, or if the deceased party dies intestate, for distribution in accordance with the laws of intestacy. Each party shall execute any document required: (i) to permit the other party to change any beneficiary designation described hereinabove; or, (ii) to waive any right to be treated as a survivor or surviving spouse of the other party".

### See Exhibit A 1 and 2.

Like *PaineWebber*, the foregoing is nothing more than a general waiver provision, which the Court of Appeals have already opined does not amount to a waiver. In *Section 8* of the Agreement, the Decedent went to great lengths to specifically identify the types of IRA accounts that the Plaintiff was waiving. *Section 8* of the Agreement is unambiguous and cannot be left to interpretation. *PaineWebber* is still good law today and viewing the facts in a light most favorable to the Plaintiff, the Court must deny the Defendant's Summary Judgement as to the waiver issue.

> b. **Plaintiff has plead sufficient facts to demonstrate a question of fact as to whether the Decedent intended to keep her as a beneficiary.**

11

Plaintiff has plead that she has witnesses and other evidence that will demonstrate that it was the express intention of the Decedent to leave Plaintiff on his insurance policy for the sake of his children and because of the remorse he felt in divorcing her. Further, he made it clear to the Plaintiff that he did not remove her and had no intentions of removing her from the subject insurance policies. **See Exhibit B**

It is a disputed fact whether the Decedent intended Plaintiff to remain on his insurance policies. There was nothing in the settlement agreement the prohibited the Decedent from leaving the Plaintiff on his policies. In fact, the Court in *PaineWebber*, found that:

> "It has not been determined . . . who the named beneficiary is. If no change of beneficiary was effected by [the husband], then [the ex-wife's] consent to a change is simply irrelevant. The Estate's consent argument improperly assumes that the named beneficiary of the East IRA was validly and effectively changed. If the beneficiary has been effectively changed, it is pursuant to a power reserved in [the husband] to which [the ex-wife's] consent was not required".

This very same issue was addressed in:

*Cassiday v. Cassiday*, 256 Md. 5, 259 A.2d 299 (1969), a married couple executed a separation agreement wherein the wife waived all rights in property, including, insurance proceeds. The parties were subsequently granted a divorce and the x-husband remarried. The facts of the *Cassidy* case are analogous to the instant case and is instructive. In the *Cassiday* case, the x-husband took steps to remove the x-wife from some of his insurance policies, but not all. The x-husband subsequently died and the x-spouse filed a claim for benefits. The insurance carrier subsequently interplead the proceeds and trial of the merits were held. The Court of Appeals opined that:

> "**There is nothing in the separation agreement which precluded Margaret from receiving money from the insured as a beneficiary, designated by the husband, in his insurance policies.** Any rights she may have as a beneficiary named by the insured were in no way affected by the delivery of the policies by her son-in-law to her husband. **He had the undoubted right to change the beneficiary in his policies; he did not see fit to do this and**

12

**her rights as beneficiary were established at the time of his death.** Also citing *Bullen v. Safe Deposit & Trust Co.*, 177 Md. 271, 277, 9 A. 2d 581, 583 (1939)".

The Defendant has not cited one case that contradicts the holding in *Cassiday*. Reviewing the facts herein in a light most favorable to the Plaintiff, denial of the Motion is appropriate as there are disputed issues of a material fact.

### c. MetLife had no right to distribute the insurance proceeds to the Tyson Estate and acted in bad faith in doing so, when they supplanted their interpretation of the agreement over the Court.

The final arguments espoused by the Defendant was that because they determined that the Plaintiff waived her interest in the proceeds and because there was no valid beneficiary, they were contractually obligated to turn over the proceeds to the estate. First, the Defendant's argument amounts to *purposeful hyperbole* and abstruse legal reasoning. The Defendant relies on *PaineWebber*, to support its contention that "leaving the beneficiary designation blank on the change of beneficiary form, decedent intended that his estate would be the beneficiary of his IRA). *PaineWebber*, does not support the Defendant's argument. Unlike *PaineWebber*, the Decedent did in fact identify the Plaintiff as beneficiary, which is proof of the Defendant's misconduct and bad faith in releasing the insurance proceeds to the estate.

The Defendant also citied Meinhardt *v. Meinhardt*, 117 Md. 426, 83 A. 715 (1912). *Meinhardt* is also distinguishable from the instant case. In *Meinhardt,* the unmarried girlfriend filed an action against the wife of the Decedent, claiming that she was entitled to insurance proceeds, because, according to the girlfriend, she and the Decedent lived together for 10 years before his death. The *Meinhardt* Court did not reached the merits due to procedural defects.

The Defendant also cited, *Urquhart v. Alexander & Alexander, Inc.,* 218 Md. 405, 147 A.2d 213 (1958), which held that "Where no beneficiary is designated, the funds belongs to the

13

insured estate"). Again, *Urquhart* is distinguishable because the Decedent identified Plaintiff as the designated beneficiary.

It is crystal clear and barefaced that the Defendant should have interplead the funds into this Court's registry. Instead, while the instant case was pending, the Defendant turned over the disputed funds to the estate in direct contradiction of their representations in their October 7, 2016, correspondence, wherein they stated:

> **"As directed by your office, we placed a legal restraint on any distribution of benefits on [sic] above mentioned claim. The restraint will remain in place until further order form [sic] the court."**

**See Exhibit C**

The Defendant now argues that despite its knowledge of these proceedings and its representations in its correspondence that Plaintiff cannot state a cause of action against it because they have acted in good faith based on their good faith belief that Plaintiff had waived her rights to the insurance. In support thereof, the Defendant cited *S. Md. Elec. Coop., Inc. v. Travelers Ins. Co.*, 52 Md. App. 140, 447 A.2d 487 (1982). The *Southern* Court found that, "if an insurer declines to make payment in the good faith belief that such payment is not required under the contract, its failure to make the payment is nor unreasonable or "without justification". It is without dispute that *Southern* is distinguishable. The Defendant's actions in making a factual determination, when they knew, or had good reason to know that the controversy was being decided by this Court, is proof of their bad faith and ill will.

Courts have found that when an insurer, such as the Defendant, interpleads, that their actions do not constitute bad faith or a breach of contract. See *State Farm Life Ins. Co. v. Murphy*, No. 2:15-cv-04793-DCN, 2017 U.S. Dist. LEXIS 168588 (D.S.C. Oct. 12, 2017) (citing *Minn. Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977 (9th Cir. 1999)( that the insurer had acted

14

reasonably in interpleading the policy benefits given its good faith belief that it faced the possibility of multiple claims). The Defendant does not enjoy the presumption of good faith as described in *State Farm*, because they failed to avail themselves of the opportunity to interplead the controversy and allow a *trier of fact* to render a decision on the merits. Instead, the Defendant *supplanted* its interpretation of the agreement in place of the Court; which why they finding themselves at this juncture. The Defendant was complicit and denial of their motion is appropriate

## IV. CONCLUSION

Because Plaintiff has demonstrated that there are material facts in dispute, this Court must deny the Defendant's Motion.

Respectfully Submitted,

THE LAW OFFICES OF JESSIE LYONS CRAWFORD, LLC

Jessie Lyons Crawford, Esquire
2601 Maryland Avenue
Baltimore, Maryland 21218
410-662-1231
Fax: 410-662-1238
attorneyjlcrawford@verizon.net

FOR PLAINTIFF DENISE PAJOTTE