UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593
MDD_TJSchambers@mdd.uscourts.gov

August 27, 2018

LETTER TO COUNSEL:

    Re:    *Denise Pajotte v. Lynette Pajotte, et al.*
             Civil Case No. TJS-17-3704

Dear Counsel:

On January 16, 2018, Judge Chuang referred this case to me for all proceedings pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF No. 86.) A number of motions are currently pending before the Court and ripe for disposition. This letter opinion addresses the following motions: Plaintiff Denise Pajotte's ("Pajotte") Motion to Remand to State Court (ECF No. 111); Pajotte's Motion for Voluntary Dismissal (ECF No. 99); Pajotte's Motion for Leave to File Fourth Amended Complaint (ECF No. 91); Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion to Dismiss (ECF No. 66); Defendant Metropolitan Life Insurance Company's ("MetLife") Motion to Dismiss Count One of the Third Amended Complaint (ECF No. 49); MetLife's Motion to Strike the Third Amended Complaint (ECF No. 47); Defendant Lynette Pajotte and the Estate of Tyson C. Pajotte's (collectively, the "Estate Defendants") Motion for Summary Judgment (ECF No. 45); Pajotte's Motion for Leave to Modify the Scheduling Order (ECF No. 41); Pajotte's Motion for Leave to File Motion for Extension of Time (ECF No. 39); Pajotte's Motion for Leave to Join Parties (ECF No. 37); and MetLife's Motion to Dismiss Second Amended Complaint (ECF No. 34). Having considered the submissions of the parties, I find that a hearing is unnecessary. *See* Loc. R. 105.6.

The facts of this case are straightforward but its procedural history is convoluted. Pajotte initiated this lawsuit by filing a Complaint for Declaratory Judgment ("Complaint") (ECF No. 2) against Lynette Pajotte ("Lynette") in the Circuit Court for Prince George's County, Maryland, on November 9, 2016. The Complaint sought a declaratory judgment as to the "rights and liabilities of the parties with respect to the allocation of proceeds" from two life insurance policies held by Tyson C. Pajotte ("Tyson"), Pajotte's former husband and the current husband of Lynette at the time of his death. (*Id.*) The Complaint also sought a declaration regarding the legality of the marriage between Tyson and Lynette. (*Id.*) Pajotte filed an Amended Complaint (ECF No. 10) on January 10, 2017. She did not obtain leave from the Circuit Court to file her Amended Complaint.

Pajotte filed a Second Amended Complaint (ECF No. 27) on August 14, 2017. Again, Pajotte did not obtain leave from the Circuit Court to file the Second Amended Complaint. The

Second Amended Complaint added MetLife as a defendant.[1] MetLife filed a Motion to Dismiss the Second Amended Complaint (ECF No. 34). In that motion, MetLife argued that the Second Amended Complaint must be dismissed because Pajotte "affirmatively waived her right to collect proceeds under Tyson's insurance policy in the Separation Agreement executed upon her divorce from Tyson." (*Id.* at 1.)

In lieu of responding to the substance of MetLife's Motion to Dismiss, on October 19, 2017, Pajotte filed a Third Amended Complaint (ECF No. 36) and a related Motion for Leave to Join Parties (ECF No. 37).[2] The Third Amended Complaint added WMATA and Reliastar Life Insurance Company ("Reliastar") as defendants and added several additional counts against the existing defendants. The Estate Defendants filed a Motion for Summary Judgment as to the Third Amended Complaint. (ECF No. 45.) Pajotte did not respond to the Estate Defendants' motion. MetLife filed a Motion to Strike the Third Amended Complaint (ECF No. 47) because Pajotte filed it without first obtaining leave of the Circuit Court, as required by Maryland Rule 2-341. MetLife also filed a Motion to Dismiss Count One of the Third Amended Complaint (ECF No. 49), which Pajotte opposed (ECF No. 60). WMATA removed the case to this Court on December 14, 2017, pursuant to WMATA Compact, Md. Code, Transp. 10-204(81). (ECF No. 61.) Once the case was removed to this Court, WMATA filed a Motion to Dismiss (ECF No. 66). Initially, Pajotte opposed WMATA's motion (*see* ECF No. 72), but she now consents to the relief that WMATA seeks (*see* ECF No. 110).

On December 27, 2017, Pajotte filed a Fourth Amended Complaint without obtaining leave of Court. On January 12, 2018, her Fourth Amended Complaint was stricken from the record. (ECF No. 84.) Pajotte filed a Motion for Leave to File Fourth Amended Complaint (ECF No. 91) on January 26, 2018, but she no longer wishes to pursue the relief sought in that motion (*see* ECF No. 109). On March 26, 2018, Pajotte filed a Motion for Voluntary Dismissal (ECF No. 99). In a July 12, 2018, Letter Order (ECF No. 104), the Court stated the conditions under which it would allow Pajotte to voluntarily dismiss her claims, but Pajotte rejected those conditions. Accordingly, the Court denied her motion for voluntary dismissal. (ECF No. 106.) On July 31, 2018, Pajotte filed a Motion to Remand to State Court (ECF No. 111), which MetLife opposes (ECF No. 113.)

I.   **Pajotte's Motion for Voluntary Dismissal (ECF No. 99)**

On March 26, 2018, Pajotte filed a Motion for Voluntary Dismissal Without Prejudice or in the Alternative to Remand to State Court. (ECF No. 99.) After considering the submissions of the parties (ECF Nos. 99, 100 & 101), the Court entered an order stating the terms under which it

---

[1] Pajotte filed a Redline Second Amended Complaint (ECF No. 27-1), but that document does not accurately portray the differences between the Second Amended Complaint and the Amended Complaint. Because the Court's analysis will focus on Pajotte's Third Amended Complaint, any difference between the Amended Complaint and the Second Amended Complaint is immaterial to the Court's decision.

[2] Pajotte's response to MetLife's Motion to Dismiss the Second Amended Complaint simply stated that the motion was "moot due to the new issues and new parties added to the Third Amended Complaint." (ECF No 38.)

would be inclined to allow Pajotte to voluntarily dismiss the case. (ECF No. 104.) Pajotte declined to accept the Court's terms for voluntary dismissal (ECF No. 105), so the Court entered an order denying Pajotte's motion for voluntary dismissal "for reasons to be stated in a forthcoming opinion." (ECF No. 106.) The Court's reasons for denying Pajotte's motion for voluntary dismissal are as follows.

Under Fed. R. Civ. P. 41(a)(2), a court may grant a plaintiff's request to dismiss an action, but only "on terms that the court considers proper." Rule 41(a)(2)'s purpose "is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). "To that end, the rule 'permits the district court to impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from the dismissal without prejudice. The district court must focus primarily on protecting the interests of the defendant.'" *Walker v. Trans Union, LLC*, No. PWG-16-3926, 2017 WL 4786625, at *2 (D. Md. Oct. 24, 2017) (quoting *Davis*, 819 F.2d at 1273). A motion for voluntary dismissal will not be granted if it will result in "plain legal prejudice" or "substantial prejudice" to the defendant. *Id.* (citing *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) and *Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir. 1986)). In considering a motion for voluntary dismissal under Rule 41(a)(2), courts look to a "non-exclusive, multi-factor test." *Id.* The factors include "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of litigation, i.e., whether a motion for summary judgment is pending." *Wilson v. Eli Lilly & Co.*, 222 F.R.D. 99, 100 (D. Md. 2004).

The first factor, the defendants' effort and expense in preparing for trial, weighs against granting Pajotte's motion for voluntary dismissal. *See Howard v. Inova Health Care Servs.*, 302 F. App'x 166, 179 (4th Cir. 2008) (noting that the Fourth Circuit has found "on multiple occasions that a district court does not abuse its discretion in denying a motion for voluntary dismissal if the case has advanced to the summary judgment stage and the parties have incurred substantial costs in discovery"). This case has been pending for more than 21 months from the time that it was filed in the Circuit Court. Before the case was removed to this Court, the parties had filed and briefed a motion for summary judgment and two motions to dismiss. The parties filed a pretrial conference report on May 16, 2017, and the case was scheduled to proceed to trial on January 8, 2018, which was just days before the case was removed to this Court. Allowing Pajotte to voluntary dismiss the case at this late stage would prejudice the defendants because the litigation would start again, in a different forum in state court, even after the defendants had spent nearly two years in litigation. Defendants state that they "have incurred great expenses in defending against Plaintiff's six proposed complaints in this case."[3] (ECF No. 100 at 5.) Pajotte's practice of repeatedly filing amended complaints—sometimes without seeking leave of Court to do so—after the other parties have filed dispositive motions increased the burden on the

---

[3] It appears that the six proposed complaints to which Defendants refer are as follows: the initial Complaint (ECF No. 2), the Amended Complaint (ECF No. 10), the Second Amended Complaint (ECF No. 27), the Third Amended Complaint (ECF No. 36), the Fourth Amended Complaint (stricken) (ECF No. 71), and the proposed Fourth Amended Complaint (ECF No. 91-5).

defendants. It would be unfair to allow Pajotte to dismiss the case after the defendants have spent so long defending it, only for her to refile the case in another forum.

The second factor, excessive delay or lack of diligence on the part of the movant, also weighs against granting the motion for voluntary dismissal. Pajotte has attempted to amend her complaint numerous times, and in some instances has attempted to file another amended complaint before a previous request for leave to amend was ruled upon. The facts underlying Pajotte's claims are not complex. It is unclear why Pajotte has taken such a scattershot approach to this litigation. The Court does not find that Pajotte has acted in bad faith, but does find that Pajotte has caused excessive delay due to a lack of diligence in this case. Had Pajotte performed a thorough legal and factual investigation into her claims, rather than attempting to amend her complaint every time a new fact or legal problem came to her attention, this litigation would have proceeded in a more routine and orderly fashion.

The third factor, insufficient explanation of the need for a dismissal, also weighs against granting Pajotte's motion. Pajotte argues that the case should be dismissed so that she can refile the lawsuit in the Circuit Court for Montgomery County, Maryland, which she believes is the "proper" jurisdiction under the terms of the Separation and Property Settlement Agreement ("Separation Agreement"). (ECF No. 99 at 8-9.) But Pajotte chose to file this case initially in the Circuit Court for Prince George's County. She did this even though the Separation Agreement, *which she attached to her initial complaint*, specifically stated that "the Circuit Court for Montgomery County, Maryland, shall at all time[s] retain jurisdiction" for matters related to the Separation Agreement."[4] (ECF No. 2-1 at 22.) Because Pajotte should have known of this provision at the time that she filed her initial complaint in this case, the Court cannot allow her to now use it as a reason that the case must be dismissed so that it can be refiled in a different Circuit Court almost two years later.[5]

The fourth factor, the present stage of the litigation, also weighs against granting Pajotte's motion. This case was removed to this Court when it was nearly ready for trial. Since the time of its removal, the defendants have filed and briefed several dispositive motions. Allowing Pajotte to voluntary dismiss the case at such a late stage would be prejudicial to the defendants.

The Court's letter order of July 12, 2018, was its attempt to reasonably fashion proper terms under which Pajotte could voluntarily dismiss the case. These terms were an attempt at

---

[4] The Separation Agreement also states that "[t]he parties shall first seek to resolve any disputes [regarding the Separation Agreement] . . . by participating in not less than two (2) hours of non-binding mediation . . . using a mediator mutually agreeable to the parties, or, if the parties cannot agree, a mediator selected by the mediation service of the Circuit Court for Prince George's County, Maryland." (ECF No. 2-1 at 24.) This provision is the only reference in the Separation Agreement to the Circuit Court for Prince George's County.

[5] For reasons set forth below, the Court also rejects Pajotte's argument that the Court lacks jurisdiction once the claim against WMATA is dismissed. In light of the prejudice that voluntary dismissal would have on the defendants, Pajotte's explanation of the need for a dismissal falls short.

ensuring that the claims against MetLife and WMATA, which have no merit, would not be filed again in state court, and that the Estate Defendants would be reimbursed for the attorney's fees they incurred since the case was removed to this Court, where Pajotte's lack of diligence likely caused them to incur unnecessary expenses. By rejecting those terms, which the Court found to be the only proper terms for a voluntary dismissal, Pajotte left this Court with no choice but to deny her Motion for Voluntary Dismissal (ECF No. 99).

## II. Pajotte's Motion to Remand to State Court (ECF No. 111)

On July 31, 2018, after the Court denied Pajotte's Motion for Voluntary Dismissal, she filed a Motion to Remand to State Court (ECF No. 111). In that motion, she stated that in light of her consent to WMATA's motion to dismiss, the case must be remanded to state court because without WMATA as party, the Court lacks federal question jurisdiction. (*Id.* at 9.) Pajotte is wrong. WMATA removed the case to this Court based on federal question jurisdiction. "[W]hen a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007). In cases such as this, courts must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.*

Although Pajotte's claim against WMATA will be dismissed for reasons stated in this letter order, the Court finds that it must still exercise jurisdiction over the pendent state-law claims. The Court views Pajotte's motion to remand as a not so subtle effort to prevent this Court from ruling on the merits of the case. Pajotte has long sought to avoid any ruling on the merits, as is evidenced by her repeated filing of amended complaints. This Court has already spent significant time sorting through the history of this litigation and judicial economy would not be meaningfully furthered at this late stage of the litigation by remanding the remaining claims to state court. The facts underlying this case are simple and the prevailing law governing the resolution of the issues in dispute is clear. In addition, it would be prejudicial to the other parties to remand this case to state court at such a late stage of the litigation. For these reasons, Pajotte's Motion to Remand to State Court is **DENIED**.

## III. Pajotte's Motion for Leave to File Fourth Amended Complaint (ECF No. 91)

On January 26, 2018, Pajotte filed a Motion for Leave to File Fourth Amended Complaint (ECF No. 91). Defendants filed a joint brief in opposition to the motion, arguing principally that the requested amendment was not supported by good cause. (ECF No. 92.) Pajotte now states that she withdraws her request for leave to file a fourth amended complaint. (ECF No. 109.) In light of Pajotte's withdrawal of her motion, the Motion for Leave to File Fourth Amended Complaint (ECF No. 91) will be **DENIED AS MOOT**.

## IV. WMATA's Motion to Dismiss (ECF No. 66)

On December 20, 2017, WMATA moved to dismiss Count II of Pajotte's Third Amended Complaint (ECF No. 36). (ECF No. 66.) In this count, Pajotte asserted that WMATA failed to comply with the requirements of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). In its motion, WMATA argued that because employee benefit plans established and maintained for employees of a state agency are specifically excluded from coverage under ERISA, and because WMATA is treated as a state level agency, ERISA does not govern WMATA's employee benefit plans. (ECF No. 66 at 1.) WMATA sought dismissal of Count II with prejudice. (*Id.*) Initially, Pajotte's response to WMATA's motion stated that the motion was moot in light of an amended complaint. (ECF No. 72.) However, Pajotte did not seek leave of court before filing that amended complaint (*see* ECF No. 71), so the complaint was stricken (*see* ECF No. 84). On July 31, 2018, Pajotte filed a notice stating that she does not oppose WMATA's Motion to Dismiss. (ECF No. 110.)

The Court notes that WMATA's Motion to Dismiss is no longer pending. The Court denied WMATA's motion without prejudice on January 2, 2018, because WMATA filed the motion without first seeking a pre-motion conference, as required by the Court's case management order. (ECF No. 76.) Although WMATA later requested leave to refile its motion to dismiss (ECF No. 79), WMATA never refiled the motion. This is likely because after WMATA requested leave to refile its motion to dismiss, Pajotte requested leave to file a motion for leave to file a fourth amended complaint.

In light of the procedural posture of WMATA's motion, the Court will **VACATE** its Order (ECF No. 76) denying WMATA's Motion to Dismiss. WMATA's Motion to Dismiss (ECF No. 66) is **GRANTED** and Count II of Pajotte's Third Amended Complaint, which asserts an ERISA claim against WMATA, is **DISMISSED WITH PREJUDICE**. In light of this ruling, Counts III and IV of the Third Amended Complaint will be **DISMISSED WITHOUT PREJUDICE**. These claims were dependent upon a resolution of Pajotte's claim against WMATA.

## V. Estate Defendants' Motion for Summary Judgment (ECF No. 45)

The Estate Defendants move for summary judgment as to Count I of Pajotte's Third Amended Complaint. (ECF No. 45.) They argue that because Pajotte "waived and relinquished all rights as the beneficiary of any life insurance policies executed prior to the Separation Agreement," she necessarily waived any beneficiary rights she had under Tyson's insurance policies, where were executed prior to the Separation Agreement. (ECF No. 45-1 at 1.) Pajotte did not file a response to the Estate Defendants' motion for summary judgment.[6]

---

[6] On December 1, 2017, Pajotte filed a Motion for Leave to File a Response to the [Estate Defendants'] Motion for Summary Judgment. (ECF No. 53.) Pajotte stated that she required additional time to file a response in light of her schedule and the holiday season. On December 4, 2017, the Circuit Court granted Pajotte an extension until December 8, 2017, to file her response to the Estate Defendants' Motion for Summary Judgment (ECF No. 58), but no response was ever filed.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations or denials of its pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

The following facts are not in dispute. Pajotte and Tyson were previously married. During the time of their marriage, Tyson obtained two life insurance policies. One of the policies was issued by MetLife and the other was issued by a predecessor company to Reliastar. Both of the policies named Pajotte as the beneficiary. After Tyson obtained the policies, Pajotte and Tyson ended their marriage and executed the Separation Agreement. The Separation Agreement contained the following provision:

> (d) In the absence of any contrary agreement of the parties set forth elsewhere in this Agreement, in the event of the death of a party, and in the further event that the deceased party has, by document executed prior to the execution of this Agreement, designated the surviving party as a beneficiary of any life insurance or annuity policy, or as a beneficiary or recipient of any death or survivor benefit or other amounts payable to the surviving party in connection with any pension plan, profit sharing plan, retirement plan, annuity contract, IRA, SEP-IRA, 401(k) plan, 403(b) plan, Thrift Savings Plan, tax deferred income or savings or investment plan, deferred compensation plan, or any other tax deferral or retirement plan or account, then in such events, and notwithstanding such designation by the deceased party, *the surviving party hereby waives and relinquishes any and all rights he or she might have as a beneficiary or as a surviving spouse or as a surviving former spouse or otherwise to receive the proceeds of any such life insurance or annuity policy*, or to receive any death or survivor benefit or other amounts payable in connection with any such pension, profit-sharing, retirement, annuity, IRA, SEP-IRA, 401(k), 403(b), Thrift Savings Plan, tax deferred income or savings or investment plan, deferred compensation plan, or similar tax deferral or retirement plan or account; *and the surviving party does hereby irrevocably assign any rights he or she might have to receive such*

7

*proceeds, benefits or amounts payable to the estate of the deceased party* for distribution pursuant to the Last Will and Testament of the deceased party, or if the deceased party dies intestate, for distribution in accordance with the laws of intestacy. Each party shall execute any document required: (i) to permit the other party to change any beneficiary designation described hereinabove; or, (ii) to waive any right to be treated as a survivor or surviving spouse of the other party.

(ECF No. 2-1 at 6.) (Emphasis added.) On the bottom of the page of the Separation Agreement containing this provision, two sets of handwritten initials appear: "TCP" (for Tyson C. Pajotte) and "DDP" (for Denise D. Pajotte). The Separation Agreement is signed by Tyson and Pajotte and dated October 27, 2006. (*Id.* at 27.)

On October 30, 2006, the Circuit Court for Prince George's County, Maryland issued a Judgment for Absolute Divorce. (ECF No. 2-2.) The judgment granted an absolute divorce to Tyson from Pajotte and ordered "that all of the terms and provision of the [Separation Agreement], dated October 27, 2006, over which the Court has jurisdiction, by and hereby are approved by the Court and incorporated (but not merged) herein by reference." (*Id.*)

Shortly after Tyson and Pajotte divorced, Tyson married Lynette. After Tyson's death, Lynette was named the personal representative of Tyson's estate. As the personal representative, Lynette made claims for benefits under Tyson's life insurance policies with both MetLife and Reliastar. At the time of Tyson's death, Pajotte was still listed as the beneficiary on both of the policies.

Count I of Pajotte's Third Amended Complaint requests that the Court issue a declaratory judgment that "determines and adjudicates the rights and liabilities of the parties with respect to the allocation of the insurance benefits in which Plaintiff is the beneficiary" and "determines if Defendant[] Pajotte's marriage to the Decedent is a legal marriage under the laws of the State of Maryland."

Ordinary principles of Maryland contract construction apply to the Separation Agreement.[7] *See Young v. Anne Arundel Cty.*, 146 Md. App. 526, 585 (2002). The construction of a written contract is a question of law. *Langston v. Langston*, 366 Md. 490, 505-06 (2001). A court reviewing the terms of a written contract must "seek to ascertain and effectuate the intention of the contracting parties." *Young*, 146 Md. App. at 585. When a contract is clear and

---

[7] The parties have not addressed the matter of choice of law. The law of the forum state, Maryland, guides the Court's choice-of-law analysis. *See Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011) ("In a federal question [claim] that incorporates a state law issue, . . . a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise."). In a contract claim, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law of the state where the contract was formed, unless there is a choice-of-law provision in the contract. *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573 (1995). The Separation Agreement was executed in Maryland. Accordingly, I will apply Maryland law in addressing Pajotte's claims related to the Separation Agreement.

unambiguous, "its construction is for the court to determine." *Id.* (internal quotation marks omitted).

In *Cassiday v. Cassiday*, 256 Md. 5 (1969), the Court of Appeals of Maryland considered whether the terms of a separation agreement precluded a former-spouse from receiving proceeds of an insurance policy as a designated beneficiary. In that case, the separation agreement provided: "The wife hereby covenants and agrees that all the personal property now in the possession of the husband shall be his sole and separate property." *Id.* at 7. The Court found that "nothing in the separation agreement . . . precluded [the wife] from receiving money from the insured as a beneficiary, designated by the husband, in his insurance policies."

The Court of Appeals examined the holding of *Cassiday* in *Painewebber Inc. v. East*, 363 Md. 408 (2001). The separation agreement at issue in *Painewebber* was more substantial than the one in *Cassiday*, containing three provisions relevant to the parties' argument in that case regarding the waiver of beneficiary interests. First, a "Pension Waiver" provision provided that the parties "expressly waive[] any legal right . . . *as a spouse* . . . to participate as a payee or beneficiary regarding any interests the other may have in any pension plan, profit-sharing plan, [etc.]" *Id.* at 415 (emphasis added). This provision did not address whether the parties waived their rights as designated beneficiaries of such plans; it only concerned each of the parties' rights under the plans "as a spouse." *Id.* Second, a "Waiver of Estate Claim" provision contained a waiver of any claims against a decedent's estate that either party may have had prior to the separation agreement. This provision did not apply to any property or future expectancies that would not pass through the estate, such as benefits that would be paid directly to the designated beneficiary of an individual retirement account. Third, a "Property Division" provision of the separation agreement provided that "Wife acknowledges that all personal property now in husband's possession belongs to the Husband," and that "Wife . . . assigns quit claims any and all interest that the Wife may have in such property." *Id.* at 417. Citing *Cassiday*, the Court of Appeals held that the interest that the former wife had in the decedent's individual retirement account as a designated beneficiary was not covered by the separation agreement, as the interest (1) arose because she was a designated beneficiary, and not "as a spouse"; (2) was payable directly to the former wife, and would not pass through the decedent's estate; and (3) was not the sort of "property" embraced by the separation agreement because the interest was an expectancy.

In *Young*, the Maryland Court of Special Appeals considered whether the terms of a separation agreement provided for a waiver of the parties' respective rights to the other's retirement funds. 146 Md. App. at 536. Applying the holdings of *Cassiday* and *Painewebber*, the court held that the waiver language in the separation agreement was legally sufficient to amount to a waiver. In contrast to *Painewebber*, the separation agreement "specifically identified the future expectancy with the specified certificate number . . . and thus amounted to a waiver of rights." *Id.* at 585 (internal quotation marks omitted); *see also East v. Painewebber, Inc.*, 131 Md. App. 302, 315 (2000) (concluding that "a general property waiver provision does not accomplish a waiver of an expectancy interest"). The Court stated that in order for a separation agreement to be sufficient to support a finding that a former spouse waived any survivorship interest or future expectancy, such agreement must "clearly provide for waiver of future expectancy interests." *Id.* at 589.

Here, the relevant provision of the Separation Agreement focuses on Pajotte's survivorship interests and future expectancies as a designated beneficiary of, among other things, life insurance policies. (ECF No. 2-1 at 6.) The Separation Agreement clearly disclaims any future rights that Pajotte might have had from such expectancies. Although the specific life insurance policies at issue are not identified by their account number or in any schedule attached to the Separation Agreement, I find that such specificity is not required. Unlike the general waiver addressed in *Cassiday*, the waiver in the Separation Agreement in this case is specific as to Pajotte's future expectancies arising from Tyson's then-existing life insurance policies. Similarly, unlike the specific-yet-inapplicable waiver provisions addressed in *Painewebber*, the future expectancies that Pajotte waived by signing the Separation Agreement in this case are clear. Through specific language in the Separation Agreement, Pajotte waived any and all rights as the beneficiary of Tyson's life insurance policies. As a matter of law, any proceeds from these policies must therefore be paid to Tyson's estate.

Pajotte also seeks a declaration regarding whether Lynette's marriage to Tyson was "a legal marriage under the laws of the State of Maryland." (ECF No. 36 at 8.) The Court declines to issue such a declaration because it is immaterial to a determination of the parties' respective rights under Tyson's life insurance policies. Nonetheless, the Court takes note of Pajotte's allegation that Tyson married Lynette on November 20, 2006, which was approximately three weeks after the Circuit Court for Prince George's County issued the Judgment for Absolute Divorce. In Maryland, a person may remarry once a divorce to a prior spouse is final. *Ricketts v. Ricketts*, 393 Md. 479, 487 (2006). A judgment of absolute divorce is final once a final order is entered and once that order is entered on the docket by the clerk. *Davis v. Davis*, 335 Md. 699, 710 (1994). Here, it appears that the Judgment for Absolute Divorce was signed by the Court on October 30, 2006, and entered on the court's docket on November 2, 2006. At the latest, Tyson's divorce from Pajotte became final on November 2, 2006, which was before he remarried. It is entirely unclear to the Court why Pajotte believes that Tyson's marriage to Lynette was not a legal marriage.

## VI. MetLife's Motion to Dismiss (ECF No. 49)

On November 21, 2017, MetLife filed its Motion to Dismiss Count One of the Third Amended Complaint. (ECF No. 49.) MetLife raises two arguments in the motion. First, it argues that the Third Amended Complaint should be stricken because it was improperly filed without leave of Court. Second, it argues that Count I of the Third Amended Complaint fails to state a claim upon which relief can be granted. Specifically, MetLife argues that Pajotte "affirmatively waived her right to collect proceeds under [Tyson's] insurance policy in the Separation Agreement executed upon her divorce from Tyson," that Tyson's estate was the rightful recipient of the insurance proceeds, and that MetLife "reasonably and in good faith relied on the Separation Agreement and Maryland law to deny" payment of the insurance proceeds to Pajotte. (*Id.* at 3.)

In response to MetLife's motion, Pajotte argued that the Court should construe the motion to dismiss as a motion for summary judgment, and deny the motion because there is a genuine issue of material fact as to the enforceability of the purported waiver language in the Separation Agreement as to Pajotte. (ECF No. 60.)

The Court will construe MetLife's motion as a motion for summary judgment. In considering the Estate Defendants' Motion for Summary Judgment, the Court has concluded that Pajotte waived her rights as the beneficiary to Tyson's life insurance policies in the Separation Agreement as a matter of law. This conclusion applies in equal measure to Pajotte's claim against MetLife.

Under Maryland law, insurers have a duty of good faith performance under insurance contracts. *See Dominant Investments 113, LLC v. United States Liab. Ins. Co.*, 247 F. Supp. 3d 696, 704 (D. Md. 2017) (citing Md. Code, Cts. & Jud. Proc. § 3-1701). "'Good faith' means an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." *Id.*; *see also* Md. Code, Ins. § 27-1001 ("[G]ood faith" means an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim.") "Maryland does not recognize a specific tort action against an insurer for bad faith failure to pay an insurance claim." *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. ELH-16-3431, 2018 WL 1471682, at *10 (D. Md. Mar. 23, 2018) (quoting *Johnson v. Kemper Inc. Co.*, 74 Md. App. 243, 248 (1988)). "However, failure to act in good faith in denying insurance coverage, under [Md. Code, Cts. & Jud. Proc.] C.J. § 3-1701 and its companion, Ins. § 27-1001, is a State statutory cause of action created in 2007." *Class Produce*, 2018 WL 1471682, at *10. A claim under C.J. § 3-1701 is ordinarily subject to an administrative exhaustion requirement with the Maryland Insurance Administration. *Id.*

Count I is styled as a request for declaratory judgment. The Court finds that MetLife's reliance on the Separation Agreement in declining to pay Pajotte's claim under the policy was done in the "good faith belief that such payment [was] not required under the contract (or under the law)." *S. Maryland Elec. Co-op., Inc. v. Travelers Ins. Co.*, 52 Md. App. 140, 149 n.4 (1982). To the extent that Pajotte is entitled to any declaration at all regarding MetLife's conduct in this case, the Court states as follows. MetLife paid the proceeds of Tyson's life insurance policy to Tyson's estate in good faith and in reliance on the Separation Agreement and Maryland law. MetLife's motion (ECF No. 49) is **GRANTED**.

In the alternative, construing MetLife's Motion to Dismiss under Rule 12(b)(6), the Court will grant the motion because Pajotte fails to state a claim upon which relief can be granted. Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also* Fed. R. Civ. P.

11

10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

In addition to accepting the well-pled allegations of the complaint as true, a district court may properly "take judicial notice of facts from a prior judicial proceeding when the [collateral estoppel] defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). While "a court ordinarily may not consider any documents that are outside of the complaint, or not expressly incorporated therein," a court is permitted to "properly consider documents incorporated into the complaint or attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *NVR, Inc. v. Harry A. Poole, Sr. Contractor, Inc.*, No. ELH-14-0241, 2015 WL 1137739, at *5 (D. Md. Mar. 13, 2015) (internal citations and quotation marks omitted). "An integral document is a document that by its very existence, and *not the mere information it contains,* gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation marks omitted) (emphasis in original).

Pajotte attached a copy of the Separation Agreement to her initial complaint (ECF No. 2-1), which was "fully adopt[ed] and incorporate[d]" into her Third Amended Complaint (ECF No. 36 at 1). As explained above, Pajotte expressly waived her rights as a beneficiary to Tyson's life insurance policies in the Separation Agreement signed in connection with the divorce. In the Third Amended Complaint, Pajotte alleges that "MetLife denied [her claim] based on incorrect representations from [the Estate Defendants] that the Plaintiff waived her rights to be the beneficiary and that the funds belong to the Estate." (ECF No. 36 ¶ 30.) Accepting this allegation as true, and having determined as a matter of law that Pajotte waived her beneficiary rights in the Separation Agreement, Pajotte has failed to state a claim upon which relief can be granted. MetLife's payment of the proceeds of the life insurance policy to Tyson's estate was proper as a matter of law.

## VII. MetLife's Motion to Strike the Third Amended Complaint (ECF No. 47)

The Court has considered the merits of MetLife's Motion to Dismiss Count I of the Third Amended Complaint. For this reason, MetLife's Motion to Strike the Third Amended Complaint (ECF No. 47) will be **DENIED AS MOOT**.

## VIII. Other Pending Motions

Several other motions remain pending. Pajotte's Motion for Leave to Modify the Scheduling Order (ECF No. 41) and Motion for Leave to File Motion for Extension of Time (ECF No. 39) will be **DENIED AS MOOT**. In her Motion for Leave to Modify the Scheduling Order, Pajotte stated that she had "not had an opportunity to conduct discovery with MetLife and would be severely prejudiced having to go through a trial without the necessary discovery." (*Id.*) In her Response to MetLife's Motion to Dismiss (ECF No. 60), Pajotte did not argue that she would be unable to present essential facts to justify her opposition without additional discovery. *See* Md. Rule 2-501(d); Fed. R. Civ. P. 56(d). In light of the Court's ruling on MetLife's motion, Pajotte will not be required to "go through a trial without the necessary discovery." The motion is now moot, as is Pajotte's Motion for Leave to File Motion for Extension of Time (ECF No.

39). Because the Court has considered the merits of Pajotte's Third Amended Complaint, the Court will construe the Motion for Leave to Join Parties (ECF No. 37) as a motion for leave to file Third Amended Complaint. That motion will be **GRANTED**. In light of the Court having granted leave to Pajotte to file her Third Amended Complaint, and because the Court has considered the merits of MetLife's Motion to Dismiss Count I of the Third Amended Complaint, MetLife's Motion to Dismiss Second Amended Complaint (ECF No. 34) will be **DENIED AS MOOT**.

An Order implementing the rulings contained in this letter opinion shall follow.

/s/
Timothy J. Sullivan
United States Magistrate Judge